DOROUGH-NEWALD COMPANY *v.* VALLEY FARMING COMPANY.

Opinion delivered January 10, 1921.

1. MORTGAGES—RIGHT TO REDEEM—FORMER ADJUDICATION.—Where the original decree of foreclosure of a mortgage provided that the mortgagor might secure the release of certain parcels of the mortgaged land, which the mortgagor had sold, upon payment within a designated time of the *pro rata* part per acre of the mortgage debt, but the mortgagor failed to comply with such provision, a subsequent petition by the mortgagor to be permitted to redeem the same parcels is concluded by the former adjudication.

2. MORTGAGES—RIGHT TO REDEEM.—Where a mortgagor's right to redeem was concluded by a former adjudication, a petition by a bank, to which notes of a purchaser from the mortgagor were negotiated, asking permission for the mortgagor to discharge the *pro rata* part of the mortgage debt as to such lands will be denied; the mortgagor having failed to exercise that right under the original decree of foreclosure.

Appeal from Clay Chancery Court, Western District; *Archer Wheatley,* Chancellor; affirmed.

*F. G. Taylor,* for appellant.

1. At the time of the commencement of the original suit appellee had no right to foreclose the mortgage except for the $5,000 note due at the time.

2. Appellees purposely and deliberately refused to comply with the release provisions of the mortgage, and the only remedy appellants had was a resort to a court of equity, and they did so at the first opportunity.

3. Appellants had a right to a release under the release provisions of the mortgage at any time before a decree of foreclosure. The only remedy appellant had was the one here pursued. 70 Ore. 142, 321. Appellants have the right to pay the *pro rata* per acre of the mortgage debt and have the lands claimed by them released. 127 Ark. 577; 27 Cyc. 1415-16; 20 A. & E. Enc. Law 1070 and notes; 57 N. J. Eq. 539; 41 Atl. 405.

The right to a release may be exercised at any time before final decree where the language of the release provision is unconditional and without limitation, as it is

here.   41 Atl. 405; 42 N. W. 483; 63 *Id.* 1012; 103 Iowa
301, 72 N. W. 531.   This same question was presented in
133 Ark. 456.   See, also, 27 Cyc. 1415-16; 20 A. & E. Enc.
Law 1070 and notes.   Appellants have pursued their only
and proper remedy and in due time.   70 Ore. s. c. 142
Pac. 321.

*D. Hopson,* for appellee.

The rights of plaintiffs and defendants were set-
tled on the former appeal.   133 Ark. 456.   Appellant is
estopped from asserting further claims.   The finding is
*res judicata* and conclusive as there was no appeal.
218 S. W. 189; 76 Ark. 473; 41 *Id.* 75.

SMITH, J.   The present appeal is a continuation of
the case of *Newald* v. *Valley Farming Co.,* 133 Ark. 456.
The litigation began as a proceeding to foreclose a mort-
gage executed by Newald to the Valley Farming Com-
pany.   The transaction covered something over eight
thousand acres of land, and it was contemplated by the
parties that Newald should resell the land in small tracts,
and the mortgage given to secure the purchase money,
provided for the release of any land so sold upon pay-
ment of the *pro rata* part of the purchase money due on
said land.

A corporation styled Dorough-Newald Company was
formed to take over Newald's contract, and the title to
the lands; and that company made a number of sales.
Among those purchasing from it were Aleks Copolish and
Michal Guilas, Poles, who each bought an eighty-acre
tract.   These Poles made cash payments and gave notes
for the balance of purchase money, and, to secure those
notes, executed mortgages on the land they had bought.

The notes and mortgages executed by the Poles to
the Dorough-Newald Company were dated September 3,
1914, and the notes were deposited with the Benton
County National Bank on September 28, 1914, by the
Dorough-Newald Company as collateral to a loan of
$1,500 made on that date to that company.

Copolish and Guilas were made parties defendant in the foreclosure suit brought by the Valley Farming Company, and service against them was had by the publication of a warning order. The affidavit for the warning order was made on May 5, 1915. The Benton County National Bank was not made a party to the suit; and its cashier testified that the bank acquired the collateral notes before their maturity in the usual course of business, and that the bank had no knowledge of the foreclosure proceeding until September 20, 1915.

Neither Copolish nor Guilas has ever filed any answer or other pleading in the cause, and they have apparently abandoned the land.

The Benton County National Bank has never filed any pleadings in this cause, although it had actual notice of the pendency and purpose of the suit before the rendition of the first decree in this cause. This decree is referred to as the decree on the stipulations, and was entered October 8, 1915. By these stipulations—which formed the basis of that decree—the parties litigating the issues raised by the pleadings undertook to compromise and settle their differences; and that decree would have been a complete settlement of all matters in controversy between Newald and the Dorough-Newald Company and the Valley Farming Company, had its terms and requirements been complied with.

Before the entry of this decree, there was filed a pleading by the Dorough-Newald Company, in which the fact was recited that certain lands embraced in the mortgage sought to be foreclosed had been conveyed to Copolish and Guilas, and other parties, and the fact was further recited that the notes of Copolish and Guilas had been assigned to the Benton County National Bank. There was a prayer that the Dorough-Newald Company "be allowed to pay the *pro rata* per acre of the said mortgage debt, and that said mortgage, so far as it affects the lands embraced in said mortgage that have been assigned as herein stated, be canceled for the use and benefit of said assignees." The bank was not made a party

to the litigation by this motion, and did not then, nor has it since, offered to pay any sum of money to obtain the release of said lands.

As appears from the opinion on the former appeal, this decree dated October 8, 1915, recited the stipulation entered into between the Dorough-Newald Company and the Valley Farming Company, and provided a time and manner within which the Dorough-Newald Company should pay the purchase money on the lands and obtain their release from the mortgage. Had the terms of this decree been complied with by the Dorough-Newald Company, that company would, by its compliance, have had the relief which it prayed in its motion.

The decree of October 5, 1915, provided that, if its terms were not complied with within the time limited, the court should, in vacation, enter a general decree of foreclosure; and such a decree was entered on January 20, 1916.

A number of the purchasers from the Dorough-Newald Company had filed suits to cancel their contracts, on the ground of fraud, and for other reasons; and these suits were consolidated with the foreclosure suit. In the meantime, Taylor and Terry, the attorneys for the Dorough-Newald Company, had obtained deeds from the company for certain portions of the land; and it was expressly recited in the decree of January 20, 1916, that the rights of these last-named parties, including Copolish and Guilas and Taylor and Terry, were not adjudicated.

The recital of the decree of January 20, 1916, in regard to the reservation of the rights of Copolish and Guilas is as follows: "And it further appearing to the court that the defendants, * * * Aleks Copolish, Mary Copolish, Michal Guilas and Lizzie Guilas, * * * have purchased or contracted with the defendant, Dorough-Newald Company, for different parts or parcels of the above-described lands, and that the issues raised by them are not here adjudicated but reserved for future determination." In the same paragraph the rights of Taylor and Terry were also reserved for future adjudication.

The purpose of this reservation is shown in the former opinion, where we said (page 464): "The court also reserved from adjudication the rights of certain persons to a rescission of their contracts for the purchase of certain parcels of land from the mortgagors. The rights and interests of F. G. Taylor and C. W. Terry and the amount of ditch taxes claimed by the plaintiffs for the year 1915 were also reserved from the decree."

It also appears, from the recital of facts in the former opinion (page 465) that, under the decree of March 17, 1917, "The court further found that the sales to certain parcels of said land were procured by misrepresentation on the part of the mortgagors, and rescission as to these tracts was allowed in the decree."

This decree of March 17 was the decree which the former appeal sought to reverse, and the present litigation is predicated upon the hypothesis that the vacation decree of January 20, 1916, excluded or reserved the Copolish and Guilas lands from its provisions and order of sale, and that the decree of March 17 did not adjudicate the matters which had previously been reserved, and that there was, therefore, no authority to sell the Copolish and Guilas lands under the decree of March 17.

It appears that the decree of March 17 has been executed by a sale of the lands there ordered sold by the commissioner appointed for that purpose.

The present appeal arises out of the motion filed by the Dorough-Newald Company on March 3, 1919. This motion is styled "Motion for Hearing on Interplea." This motion recites the facts that, before the rendition of the final decree, it filed an intervention, asking that it be allowed to redeem the lands sold by it to Copolish and Guilas before the maturity of the mortgage which the original suit was brought to foreclose, alleging that it had sold the lands to Copolish and Guilas, and had taken notes for unpaid purchase money, which had been duly assigned by it to the Benton County National Bank. The motion concluded with the prayer, "That this cause be redocketed, and that said intervention be heard and

disposed of by the court.'' The court denied the prayer of the motion upon the ground that the matters there set out had been fully adjudged; and this appeal is from that order.

Accompanying the motion just referred to was a copy of the previous motion filed by the Dorough-Newald Company asking that it be allowed to redeem the Copolish and Guilas lands. In other words, the last motion was based upon the assumption that the court had not adjudicated the issues raised in the original motion. We think this assumption is not correct, for the reasons hereafter stated.

The reservation, in the decree of January 20, 1916, of the decision on the issues raised by the purchasers from Dorough-Newald Company, who had asked a rescission of their contracts, was for the benefit of those purchasers. A number of those purchasers obtained the relief prayed in the decree of March 17. Those purchasers, not only did not ask to be allowed to pay the *pro rata* part of the mortgage debts against their lands, but asked that their contracts be rescinded. Copolish and Guilas did not obtain that relief, as they did not ask it. As has been stated, Copolish and Guilas have filed no pleadings of any kind in this litigation, and have not appealed from any of the decrees; and we do not, therefore, have before us any question in regard to their rights.

The decree of March 17 described the land bought by Copolish and Guilas, and ordered its sale, and the land was sold pursuant to the directions of that decree.

In the first motion filed by Dorough-Newald Company the prayer was that it be allowed to redeem the land sold to Copolish and Guilas for the benefit of the bank to which it had sold the Copolish and Guilas notes. The Dorough-Newald Company, and not the Benton County National Bank, was the litigant which filed that motion; and it was the duty of that company to see that the motion was taken care of by the court, either in an interlocutory, or in a final, decree; and if it did not do so, it can not now complain.

But we think the court below correctly held that this motion had been adjudicated. The decree of October 8, 1915, undertook to settle all the matters in controversy between Newald and the Dorough-Newald Company with the Valley Farming Company. That decree expressly stipulated how Newald and the Dorough-Newald Company might redeem particular portions of the land; and the controlling question decided on the former appeal was that this decree of October 8, 1915, was a final decree, which settled the rights of Newald and the Dorough-Newald Company; and concerning that decree we said in the former opinion (p. 468): "All of the issues raised by the pleading between the plaintiffs and these defendants (Newald and the Dorough-Newald Company) were settled except as to whether or not the plaintiffs should be allowed the ditch taxes for 1915, which it had alleged that it had paid."

As we view the record now before us, the present appeal is an attempt to have reviewed a matter which was not only expressly raised by the pleadings filed by Dorough-Newald Company before the rendition of the original decree in the cause and therefore concluded by the decree, but one which was in fact adjudicated. The party presenting the matter to the court for adjudication was the Dorough-Newald Company, which company did not appeal from that decree, and it can not now, by using the name of the Benton County National Bank, reopen that case.

The Benton County National Bank prayed an appeal from the order of the court dismissing this last motion filed by the Dorough-Newald Company; and, if we treat that motion as having been filed by the bank itself, and not merely for its benefit, the status of the case is not changed, for the bank does not ask that it be allowed to discharge the *pro rata* part of the mortgage debt against the Copolish and Guilas lands, but only that the Dorough-Newald Company be allowed to do so; and, as we have shown herein, that company was awarded that right without availing itself of it. The decree of the court below will therefore be affirmed.